**In the Matter of Kelly Wayne PATTERSON, Debtor.**

**Otto HARKINS, Plaintiff,**

**v.**

**Kelly Wayne PATTERSON, Defendant.**

Bankruptcy No. 85–03138–SJ–W.
Adv. No. 85–0713–SJ–W.

United States Bankruptcy Court,
W.D. Missouri,
St. Joseph Division.

May 23, 1986.

Order Denying Motion to Alter or Amend Judgment Oct. 21, 1986.

Thomas W. Koelling, Koelling & Crawford, P.C., Kansas City, Mo., for plaintiff.

William Harrison Norton, Kansas City, Mo., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW FINAL DECREE AND JUDGMENT DENYING COMPLAINT OBJECTING TO DISCHARGE

DENNIS J. STEWART, Chief Judge.

The plaintiff seeks denial of discharge[1] on the grounds that defendant made false oaths in connection with this bankruptcy proceeding within the meaning of section 727(a)(3), (4) of the Bankruptcy Code. The evidence which was adduced in the course of the plenary evidentiary hearing which was conducted by the court in this case on March 24, 1986, demonstrated that the debtor is a beneficiary of the will of Lawrence Leland Sturges, deceased; that the probate estate of the decedent is currently in the process of adjudication in a probate court in the State of California[2]; that the will of the decedent which is being put in effect provides that the property which the debtor is to receive under its provisions are to be contained in a "spendthrift" trust until the debtor is 30 years of age[3]; that,

---

**1.** The complaint which was filed on December 17, 1985, contained three counts. The first count complained of the making of a false oath in connection with these proceedings, in violation of section 727(a)(4) of the Bankruptcy Code, in failing to report the existence of the $43,480.43. The second count complained of the concealment of the same assets within the meaning of section 727(a)(3) of the Bankruptcy Code. The third count seeks a decree of nondischargeability with respect to an indebtedness of $28,660.00 plus interest as having been created by fraud within the meaning of section 523(a)(2) of the Bankruptcy Code. The third count was not a subject of the pretrial briefing nor of the evidence offered in the course of the hearing of the merits of this action.

**2.** See *Estate of Larry L. Sturges a/k/a as Lawrence Leland Sturges and L.L. Sturges,* Case Number NE P–27680, Superior Court of California, County of Los Angeles.

**3.** The will pertinently provides that "(i)f a portion of this trust estate should become distributable to either my niece KAREN or my nephew KELLY (WAYNE PATTERSON) prior to the time they attain the age of thirty years, then his or her distributive share shall continue to be held in this trust until he or she attains the age of thirty years."

as of the time of the filing of the within title 11 proceedings, debtor was still some 3 years short of that age[4]; that, nevertheless, the California probate court had, on June 10, 1985, which fell before September 6, 1985, when the within petition for relief was filed, issued an order awarding the sum of $43,480.43 to the debtor on the basis of a finding that the award was not within the "spendthrift" provisions of the decedent's will[5]; that the debtor, in accordance with the tenor of this order of the California probate court, received a check in the sum of the above award; that, on the advice of one Ericson who purported to be serving as counsel in the probate proceedings for the debtor and some of his other relatives,[6] to the effect that the probate court order was unlawful and was under appeal, the debtor returned the check to Ericson for the purpose of having it returned to the corpus of the estate; and that, consequently, the debtor did not schedule the $43,480.43 check as property of the estate nor did he otherwise notify the officers of the bankruptcy estate of its existence.

### Conclusions of Law

■ The foregoing set of facts may well indicate that the $43,480.43 is property of the estate and that the trustee in bankruptcy should accordingly mount a suit against its custodians to require the turnover of estate property.[7] Under the law which has been fixed by our district court in *Matter of Maxson*, Civil Action No. 82–6038 (W.D.Mo. Sep. 22, 1982), those portions of a spendthrift trust which the debtor becomes entitled to receive at or before the 180th day next succeeding bankruptcy are property of the bankruptcy estate.[8]

■ Under the legal principles, it may well develop that the trustee in bankruptcy, in a future suit, may establish the estate's entitlement to the turnover of the monies represented by the check which the defendant debtor has now returned to Mr. Ericson, the lawyer. But, in determining whether a discharge in bankruptcy should be denied for debtor's denying in his schedules and otherwise the existence of the monies as estate property, the court must assay the evidence before it to ensure that there is sufficient proof of intention.

" 'Under the applicable authorities, the "intent to hinder, delay, or defraud" which section 727(a)(2), Title 11, United States Code, makes prerequisite to the denial of discharge is an actual intent which is equally subjective as that defined by the

---

4. The testimony appears to be uncontradicted that, as of the time of the hearing of this action, the debtor Kelly Wayne Patterson was 27 years of age.

5. In its order of November 21, 1984, the Superior Court of the State of California found that the executor of the will believed "that there is not sufficient liquid assets in this Estate to support the trust as intended by the Decedent." Consequently, the residence of the decedent was sold and the proceeds thereof divided among the beneficiaries, including the debtor, Kelly Wayne Patterson. The Superior Court made a finding that "(d)ecedent's will, dated November 15, 1982, which was admitted to probate on June 28, 1983, is ambiguous, in that it fails to set forth an alternate plan of distribution or an alternate trust plan is there is insufficient liquid assets with which to administer the trust as established in the decedent's will." The record of the California court system shows that an appeal has been filed from the Superior Court ruling and that a "writ of supersedeas" has been issued "staying distribution of estate assets pending determination of the appeal."

6. Although the evidence tended to show that Mr. Ericson represented the debtor's relatives, it was Mr. Ericson to whom the debtor had looked for information which he regarded as authoritative with respect to the California state proceedings.

7. See section 541 of the Bankruptcy Code insofar as it makes all property which a debtor "becomes entitled to acquire" by bequest, devise or inheritance "within 180 days" after the filing of the bankruptcy petition property of the bankruptcy estate. It is the trustee who is authorized to bring a suit to recover such property on behalf of the estate.

8. "(T)he general rule is that a spendthrift trust protects the funds only so long as they are under the trustee's care. 'Once the proceeds are distributed to the beneficiaries, of course, they escape the protection of the clause and may be reached by creditors.' *First Northwestern Trust Co. v. Internal Revenue Service*, 622 F.2d 387, 391 (8th Cir.1980)." *Matter of Maxson*, Civil Action No. 82–6038 (W.D.Mo. Sep. 22, 1982).

decisions rendered under section 523(a)(6) ... ('In order to justify a refusal of discharge ... it must be shown that the acts complained of were done with an intent to hinder, delay, or defraud ... creditors. This intent, moreover, must be an *actual fraudulent intent* as distinguished from constructive intent.' 1A Collier on Bankruptcy para. 14.–47(1), pp. 1410, 1411 (1978) (Emphasis added.) Cf. *In re Adlman,* 541 F.2d 999 (2d Cir. 1976).')"

*Matter of Yackley,* 37 B.R. 253, 255, n. 3 (Bkrtcy.W.D.Mo.1983). In this endeavor, the court may consider the fact that the debtor had not scheduled the property on the advice of counsel that it was not property of the estate.[9] The court must also consider that the issue of whether the debtor is entitled to the money represented by the check is still under appeal in the state courts of competent jurisdiction and that it is state law under which the issue is to be determined.[10] Given these facts, this court cannot say that the defendant had an actual and subjective fraudulent intent in not disclosing the existence of this fund of money.[11] It is therefore, for the foregoing reasons,

ORDERED, ADJUDGED, AND DE-CREED that the within complaint for denial of discharge be, and it is hereby, denied.

## ORDER DENYING PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT OR FOR NEW TRIAL

This court formerly, on May 23, 1986, issued its written findings of fact, conclusions of law, and final decree and judgment denying the plaintiff's complaint objecting to the discharge in bankruptcy of the debtor. The objection levelled by the plaintiff was to the effect that the debtor had received the sum of $43,480.43 in distribution from a decedent's estate of which he was the legatee; that he did not report the reception of such legacy in his schedules in this case; that he denied any right, title and interest to the money in response to questions posed to him in the course of the meeting of creditors; and that he knew or should have known that he was obliged to disclose the existence of such monies. The plaintiff therefore sought denial of discharge on the grounds that the debtor had made false oaths in these bankruptcy proceedings and, further, had actively removed and concealed the money within the meaning of §§ 727(a)(2) and 727(a)(4)(A) of the Bankruptcy Code. The court found that, although the debtor had received the money, he was led to believe by his lawyer in the probate proceedings that it was not his because it was subject to a spendthrift provision in the decedent's will and his belief was supported by the fact that the order of distribution had been appealed and the debtor had in fact returned the $43,-480.43 either to the estate or to the lawyer. The court concluded that, although the trustee might well successfully sue to recover the money on behalf of the estate, the facts thus found did not warrant a finding of any intentionally fraudulent conduct by the debtor.

The plaintiff now requests that this court alter or amend its judgment to this effect or, in the alternative, grant him a new trial. The respects in which errors are alleged to have been made by the court are inconsequential and incorrect. It is first

9. When intention is an issue, advice of counsel is a factor to be considered, unless the party should know that failure to schedule the asset is forbidden by the law. In this case, it appears that there could be no clear knowledge by the debtor of his obligation to schedule this asset or potential asset of the estate. Under the law observed in this district, an ambiguity in the controlling law—contract or instrument—justifies the debtor's belief in good faith that he does not have to schedule the property.

10. See note 5, *supra.* "(T)he question ... must be resolved by reference to the law of the state where the property rights are held." *Matter of Anderson,* 12 B.R. 483, 488 (Bkrtcy.W.D.Mo. 1981).

11. "(E)xtrinsic evidence of actual intent ... (is necessary to) subject (the failure to schedule) to the ... provisions of section 727." *Ford v. Poston,* 773 F.2d 52, 54 (4th Cir.1985). "(A)ctual intent ... must be shown" in the context of Section 727(a)(4). *In re Devers,* 759 F.2d 751 (9th Cir.1985).

said that the court misstated the name of the lawyer who gave the debtor the advice that the $43,480.43 was not his, but should be returned to the decedent's estate. The plaintiff contends that the attorney's name was "Jeffers", whereas the court had recited the name to be "Ericson" or "Erickson". The name referred to by the debtor in his testimony in this action was "Jeffers". The court's order to the effect that it was "Erickson" was a typographical error which should not effect the rectitude of the judgment issued by it.

 Plaintiff next requests that the court "expand" its findings of fact so as to include mention that the defendant more

than once failed and refused to disclose the existence of the $43,480.43; that he did so not only by failing to mention it in his schedules, but also in his testimony in the meeting of creditors and in response to other questions.[1] In each instance, however, it is undenied that the inquiries were into the location and existence of *property of the estate,* and it cannot therefore be established that the debtor intentionally and fraudulently uttered a false oath in connection with these proceedings. For, in consonance with the crucial material findings made by the court in the now-challenged judgment,[2] the defendant in good faith believed that the $43,480.43 was not

---

**1.** The court made ultimate findings in the now challenged judgment which comprehend those which the plaintiff now requests the court to make. In its challenged judgment of May 23, 1986, this court assumed and found it to be established that the defendant had not disclosed the existence of the potential legacy either in his petition and schedules or in the meeting of creditors. The issue upon which decision depended was that of whether there was a fraudulent intention in the nondisclosure. The court decided that the defendant lacked such a fraudulent intention; that he reasonably and genuinely believed, under the circumstances, that the potential legacy was not part of the bankruptcy estate. In large part, in making this determination, the bankruptcy court was simply dependent upon its assessment of the credibility of the defendant as a witness. This determination, in turn, largely depended upon the court's view of the appearance and demeanor of the defendant as a witness, an issue on which the trial court's subjective conclusion is virtually sovereign. See, e.g., *In re Windle,* 653 F.2d 328, 331 (8th Cir.1981), holding that "(t)he deference owed by appellate courts to finders of fact is at its highest where the issue turns on the resolution of a direct conflict between live witnesses." Especially in a case such as that at bar, it is held that, "(b)ecause the Referee is in a superior position to make the proper determination of any issue of fact, it has been held that he has broad discretion in granting or refusing discharge." *In re Brown,* 314 F.Supp. 947, 954, 955 (W.D.Ark.1970), affirmed, 444 F.2d 49 (8th Cir. 1971).

In the motion at bar, the plaintiff accuses the court of failing to assess the "cumulative facts of this case," including some of the facts which he claims point circumstantially to a fraudulent intention. He adverts to facts, however, which may point to an innocent intention equally as well as a fraudulent intention. He complains that the court failed to find that debtor's bankruptcy attorney advised him fully to disclose *his*

*assets;* that the debtor, in his petition for voluntary bankruptcy, stated that none of *his property* was in the hands of a receiver, trustee, or third person, even though "the personal representative and trustee of the estate of Lawrence Leland Sturges was holding $43,480.43 of the Defendant's"; that the debtor stated in his petition that he was not a party to a *pending lawsuit* at the time of the filing of his petition, even though he was then "and is a party (in a contested probate proceeding) involving the estate of Lawrence Leland Sturges"; that the debtor also denied in his statement of affairs having made any prepetition transfers when "within three months prior to the Defendant's filing of his petition, Defendant had received and subsequently returned to the personal representative of the estate of Lawrence Leland Sturges a check in the sum of $43,480.43"; and that the debtor stated that he had not consulted Mr. Jeffers as his attorney. The debtor, however, did not regard the $43,480.43 as *his property* or as among *his assets.* And he did not, according to his testimony in the hearing of the action at bar, regard Mr. Jeffers as his attorney, but rather as an attorney who had been retained by his relatives. There is nothing in the record to impugn the good faith of these answers—although the record in the California case shows Mr. Patterson to be a formal party to the pending appeal and Mr. Jeffers to be his attorney.

**2.** "(T)he court may consider the fact that the debtor had not scheduled the property on the advice of counsel that it was not property of the estate. The court must also consider that the issue of whether the debtor is entitled to the money represented by the check is still under appeal in the state courts of competent jurisdiction and that it is state law under which the issue is to be determined. Given these facts, this court cannot say that the defendant had an actual and subjective fraudulent (intent) in not disclosing the existence of this fund of money."

property of the estate. The court therefore declines to make the additional and immaterial findings of fact.

 Finally, the plaintiff accuses the court of applying an erroneous legal standard in citing *In re Adlman,* 541 F.2d 999 (2d Cir.1976), and other cases to the effect that evidence extrinsic to that of a concealment, transfer, false oath or removal is necessary to denial of a discharge under § 727 of the Bankruptcy Code. It is said by the plaintiff that "[f]or the Court to impose the burden it has upon the Plaintiff, virtually eliminates the intent and usefullness of § 727 of the Code. Any debtor may fail to list or disclose as much property or information as he chooses and if discovered and challenged on the matter, simply state he did not mean to hinder, delay or defraud his creditor to absolve himself." In support of its contention to this effect, the plaintiff cites decisions which hold that evidence of a false statement or concealment, without more, may make a submissible case for denial of discharge under § 727, *supra.*[3] This court has no quarrel with any of those decisions to the extent to which they apply in this action. There can be little question that if such a false statement, concealment, transfer or removal is shown, the burden of production of evidence is shifted to the

<hr>

3. This court agrees with the principle stated in *First Northwestern Trust Co. v. Internal Revenue Service,* 622 F.2d 387 (8th Cir.1980), to the effect that interests in trusts such as comprise the subject matter of the action at bar should be disclosed in a debtor's petition and schedules. But, in this action, the critical question is that of the defendant's intention. The debtor satisfactorily meets any presumption of a fraudulent intention which—as plaintiff contends—may arise from the fact of the nonscheduling of the asset. The cases cited and relied upon by the plaintiff in his motion to alter or amend judgment or for new trial so demonstrate. See, e.g., *In re Butler,* 38 B.R. 884, 888 (Bkrtcy.D.Kan.1984) ("(A) presumption of actual fraudulent intent necessary to bar a discharge arises when property is either transferred gratuitously or is transferred to relatives.... These presumptions ... shift to the debtors the burden of establishing that they lacked fraudulent intent," but the burden can be satisfactorily met by their credible testimony); *In re Chambers,* 36 B.R. 791, 793 (Bkrtcy.W.D.Ky.1984) ("(O)missions of large sums of money by the debtor and his failure thereafter to promptly amend his schedules to reflect these omitted assets or the actual collection thereof is a 'reckless indifference to the truth' which is equivalent of fraud for purposes of denying discharge when knowingly and fraudulently made" but the debtor may demonstrate that he "was uncertain as to the need of inclusion of these accounts" by "disclos(ing) the transactions for such legal interpretations as may be warranted," as he has done in the trial of this action); *Broad Nat. Bank v. Kadison,* 26 B.R. 1015, 1018 (D.N.J.1983) (correctly holding that "(i)ntent to conceal financial information is not a requirement in order to support an objection to a discharge" under section 727(a)(3) which requires the keeping and preserving of such records as will disclose a debtor's financial history and transactions. But intent is definitely an element of the species of objections to discharge which are made the basis of the complaint at bar); *In re Mascolo,* 505 F.2d 274, 278 (1st Cir.1974) ("(K)nowing and fraudulent omission of a bank account, whether or not it is closed at the time of filing, warrants the denial of discharge.") (Emphasis added.); *Farmers Savings Bank v. Anton,* 1 F.2d 103, 108 (8th Cir.1924) ("(T)he law presumes, if property which should have been included in the schedules of a bankrupt is omitted therefrom, that its omission was intentional and fraudulent, and for the purpose of concealing the same with intent to hinder, delay and defraud his creditors. The burden is cast upon the bankrupt to overcome this presumption by a *satisfactory explanation* of the omissions before he can obtain a discharge from his debts.") (Emphasis added.); *In re Cycle Accounting Services,* 43 B.R. 264, 269, 270 (Bkrtcy.E.D.Tenn.1984) ("Unless it is patently clear that property should be scheduled, reliance upon the advice of counsel to whom all relevant facts are disclosed generally negates any inference of fraud where assets have been omitted."); *Mazer v. United States,* 298 F.2d 579, 582 (7th Cir.1962) ("(I)f the objector shows to the satisfaction of the court that there are reasonable grounds for believing that the bankrupt has (knowingly filed fraudulent schedules), the burden of proving that he did not commit such acts (knowingly and fraudulently) is upon the bankrupt."); *In re Mazzola,* 4 B.R. 179, 182 (Bkrtcy.D.Mass.1980) ("A false statement in the schedules or statement of affairs due to mere mistake or inadvertence is insufficient for the denial of a discharge: fraudulent intent is necessary to bar a discharge."); *In re Klapp,* 24 B.R. 598, 600 (9th Cir. BAP 1982) (" 'This statement produces a result which recognizes the Congressional policy of denying the debtor the benefits of the discharge of debts which were scheduled in a case where the debtor was *dishonest* or failed to cooperate in the administration of the estate.' ") (Emphasis added.), affirmed, 706 F.2d 998 (9th Cir.1983).

defendant.[4] In this action, however, defendant met and sustained that burden by affirmatively producing evidence of the absence of any fraudulent intention. The production of such evidence, if credible, keeps the burden of persuasion on the plaintiff. It was credible in this action and the court accordingly found that a fraudulent intention was lacking. A correct legal standard was applied and the plaintiff's contention in this regard is therefore rejected.

The plaintiff asserts that it was error for this court to admit in evidence the defendant's testimony to the effect that he had been advised by the attorney Jeffers that the $43,480.43 was not the property of the defendant and that it had been erroneous for the California probate court to purport to award it to him. It is the plaintiff's position that:

> "F.R.E. 803(3) covers the 'State of Mind' exception to the general hearsay rule, that hearsay is inadmissible. Rule 803(3) allows the *declarants* [sic] out of court statements to be used to show the *declarants* [sic] state of mind. The defendant was testifying as to what the *declarant* (Thomas Jeffers) had said to show his own state of mind (Defendants). That is explicitly not the design of Rule 803(3), for it is the *declarants* [sic] state of mind which must be in issue not the witnesses. 4 *Weinstein's Evidence,* para. 803(3)[3], pp. 803–11 to 803–13; *U.S. v. Calvert,* 523 F.2d 895, 910 (8th Cir.1975); *State v. Bolick [Boliek],* 706 S.W.2d 847 (Mo. banc. 1986). By the Court's allowing the Defendant to testify what someone else allegedly said to prove the Defendant's state of mind exceeds the pupose [sic] of Rule 803(3) and makes it impossible to challenge the fact as to whether the statement was even made, let alone the fact that the Defendant had relied on it. Additionally, due to the fact that such testimony has none of the safeguards for veracity found in other exceptions to the general hearsay rule and due to its self-serving purposes, it

should be scrutinized heavily and given little or no weight. However, from the Courts (sic) opinion it is evident that the Court placed much emphasis on the Defendant's testimony in this regard and as a result the plaintiff has been prejudiced."

Defendant's testimony as to Jeffers' statement, however, was not admitted in evidence as an exception to the hearsay rule, but rather as non-hearsay. Testimony as to the making of the statement by Jeffers was not admitted as evidence of the truth of the statement, but rather simply to show that the statement had been made. The Federal Rules of Evidence recognize the admissibility of such evidence as non-hearsay. "If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay ... The effect is to exclude from hearsay the entire category of 'verbal acts' and 'verbal parts of an act,' in which the statement itself affects the legal rights of the parties or is a circumstance bearing on conduct affecting their rights." Advisory Committee's Note to Rule 801 of the Federal Rules of Evidence. See also Strahorn, A Reconsideration of the Hearsay Rule and Admissions, 85 U.Pa.L.Rev. 484, 490 (1937), to the following effect:

> "If the making of the utterance is the ultimate thing sought to be proven in the case, rather than a device for proving that thing, the suspicion of hearsay attaches the least. So it is that the topic of utterances as operative conduct is one of the simplest applications under the hearsay rule. No question of possible testimonial or narrative use can arise when the speaking of the words determines the rights being litigated. Thus it is that such typical examples as the making of a promise, the speaking of a slander, the printing of a libel, the speaking of marriage vows are all species of extra-judicial utterances provable despite the hearsay rule because they are the operative conduct of the speaker."

---

**4.** See note 3, *supra.*

Similarly, in the action at bar, the defense primarily relied upon by the defendant was advice of counsel. Consequently, his testimony as to that advice was testimony as to the operative conduct of the speaker and hence cannot be deemed barred by the rule against hearsay. There is no violation of the traditional hearsay rule, or of the right to confrontation and cross-examination, because evidence of the making of the statement does not involve the truth or falsity of the statement itself. And the debtor's testimonial relation of it is entitled to great weight, particularly when it is consistent with the other proven facts—including the taking of an appeal from the probate court's order of distribution—to believe that the statement was made. This contention of the plaintiff must therefore be rejected.

The plaintiff complains further of the indirect reference by the court (by way of quoting from other authorities) of the decision in *In re Adlman*, 541 F.2d 999 (2d Cir.1976), as requiring him to show the fraudulent intention of the defendant by means of evidence wholly extrinsic to the act of non-scheduling and nondisclosure itself. But the reference to *Adlman, supra*, in the challenged judgment was wholly indirect and preceded by a "cf.," which only beckons the reader to compare the decision thus indicated with others on which the court has relied. It is obvious from the four corners and the context of the challenged judgment that the standard employed by the court was only that an actual fraudulent intention should be shown. See *In re Devers*, 759 F.2d 751, 753 (9th Cir. 1985), to the following effect:

> "The cases interpreting the statute have held that actual intent to hinder, delay, or defraud must be shown. Constructive fraudulent intent cannot be the basis for denial of discharge."

Finally, the plaintiff asserts that "advice of counsel" is not always a viable defense, citing *In re Mascolo*, 505 F.2d 274, 276 (1st Cir.1974), in which the court pertinently held that:

> "We agree that an explanation by a bankrupt that he had acted upon advice of counsel who in turn was fully aware of all relevant facts generally rebuts an inference of fraud ... However, even the advice of counsel is not a defense when it is transparently plain that the property should be scheduled."

In this action, however, it was reasonable for the defendant to have relied upon the advice of counsel. It was consistent with the other facts and circumstances, as observed above, including the fact of the appeal from the probate court order purporting to effect distribution of the $43,480.43 to defendant. This contention must also therefore be rejected.

Counsel for plaintiff should advise the trustee in bankruptcy of the existence of this possible asset of the estate so that the issues concerning whether it actually should be brought into the estate can soon be brought before this court and resolved.

Therefore, for the above and foregoing reasons, it is hereby

ORDERED that plaintiff's motion to alter or amend the judgment of May 23, 1986, or in the alternative for a new trial be, and it is hereby, denied.