**In re Charles Rex MONTGOMERY and Maxine Amelia Montgomery, Debtors.**

**AMERICAN STATE BANK, Plaintiff,**

**v.**

**Charles Rex MONTGOMERY and Maxine Amelia Montgomery, Defendants.**

Bankruptcy No. 86–40241.
Adv. No. 86–4067.

United States Bankruptcy Court,
N.D. Indiana,
Hammond Division.

March 7, 1988.

Charles Weaver, Knox, Ind., for plaintiff.

Patricia L. Engels, Lake Village, Ind., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT [1]

KENT LINDQUIST, Chief Judge.

### I

### Statement of Proceedings

This adversary proceeding came on for a bench trial on September 15, 1987 pursuant to Pretrial Order dated July 13, 1987.

The complaint of American State Bank (hereinafter: "Plaintiff") filed August 1, 1986 asserts in the alternative that the Debtors, Charles Rex Montgomery and Maxine Amelia Montgomery (hereinafter: "Defendants" "Defendant Rex" or "Defendant Amelia") should be denied a discharge in bankruptcy generally pursuant to § 727 or that the specific indebtedness by the Defendants to the Bank should be determined to be nondischargeable pursuant to 11 U.S.C. § 523.

Pursuant to second pretrial conference held on April 8, 1987, the Plaintiff agreed that it was proceeding pursuant to 11 U.S.C. § 727 and not pursuant to 11 U.S.C. § 523. At said pretrial, the parties also stipulated as to the value of the real estate

in question which the Defendants allegedly concealed from their Schedule of Assets. *See* Pretrial Order dated April 10, 1987.

Pursuant to fourth pretrial conference held on July 9, 1987, the parties stipulated as to the authenticity and genuiness of the exhibits set out in their pretrial statements. The parties also stipulated that the title search and appraisal set out in Clauses 2(g) and 2(h) of the Plaintiff's pretrial statement should be admitted into evidence as to proof of title and value of the real estate in question. *See* Pretrial Order dated July 13, 1987.

The Plaintiffs' complaint asserts that the Defendants in connection with their case made a false oath or account, and knowingly and fraudulently omitted assets from their schedule of assets by failing to list certain real estate owned by them.

### II

### Findings of Fact

The Court takes judicial notice of the Defendants' Schedule B-1, "real estate" filed with their original petition commencing their case on April 23, 1986. That Schedule uncategorically stated that they owned no real estate whatsoever. The instructions for this Schedule provide that the Debtors should schedule *all* real property in which they had an interest.

The Court also takes judicial notice that on August 22, 1986 the Defendants filed their Amended Schedule B-1 as to real estate owned by them, and at that time stated as follows as to real estate owned by them:

The Northwest Quarter of Section 20, Township 27 North, Range 8 West of the 2nd P.M., Newton County, Indiana, containing 160 acres, more or less

Control, possession and proceeds of said realty, lie in the life estate of John Montgomery, father of Debtor Charles Rex Montgomery. Debtor's contingent interest in said realty is equal to 1/6 of the remainder. Present value unknown.

1. This Order constitutes the Courts Finding of Fact and Conclusions of law pursuant to Fed.R. Civ.P. 52 as made applicable by Bankruptcy Rule 7052.

The Debtors' Amended Schedule B-1 assigned no value to the life estate interest.

This Amended Schedule was thus filed 21 days after this adversary proceeding was instituted by the Bank.

Pursuant to the Pretrial Order dated July 13, 1987, the exhibits attached to the pretrial statements of the respective parties were stipulated to be identified and subject to objection on any other grounds.

At the outset of the trial the parties stipulated that the following documents were to be admitted into evidence and the Court so found:

1. Plaintiff's Exhibit No. 1; Financial Statement by Defendant Rex to Bank dated March 1, 1980.

2. Plaintiff's Exhibit No. 2; Financial Statement by Defendant Rex to Bank dated May 2, 1981.

3. Plaintiff's Exhibit No. 3; Financial Statement by Defendant Rex to Bank dated May 15, 1982.

4. Plaintiff's Exhibit No. 4; Financial Statement by both Defendants to Bank dated March 26, 1984.

5. Plaintiff's Exhibit No. 5; Financial Statement by Defendant Rex to Bank dated February 12, 1985.

6. Plaintiff's Exhibit No. 6; Results of title search by Newton County Title Company dated November 18, 1986 which states as follows:

   We have searched the records of Grant Township (27 North, Range 8 West) but do not find any property owned by Rex Montgomery now or over the past from 1970 thru November 14, 1986, with the exception of the Northwest quarter of Section 20, Township 27 North, Range 8 West, containing 160 acres, which is owned in fee by Rex, Robert, Merlin, Willard and Norman Montgomery with a life estate to John Montgomery.

   Signed

   Sincerely

   NEWTON COUNTY TITLE COMPANY

   Catherine Cheek

7. Plaintiff's Exhibit No. 7; Certified copy final decree entered in the estate of Hazel Montgomery, Estate No. E75–31, filed August 11, 1976, in which the Court decreed that a life estate in the subject property vested in one Guy Montgomery, and that upon his death a life estate vested in one John A. Montgomery, and upon his death fee simple title vested in the five children of John Montgomery as tenants in common, the Defendant Rex being one of those five children.

8. Plaintiff's Exhibit No. 8; Appraisal of subject property dated March 26, 1987 by one William D. Byrd in which the remainder interest of the Defendant Rex in said property was valued at $15,000.00.

The former president of the Bank, Lowell Gardner, (hereinafter: "Gardner") testified he was president of the Bank from 1976 to 1985 and that the Defendant Rex executed Plaintiff's Exhibit Nos. 3, and 5 and that the Defendants executed Plaintiff's Exhibit No. 4 all of which were done in his presence. Gardner further related that Plaintiff's Exhibits No. 1 and 2 were executed before he saw them.

Each financial statement contains a "Schedule A—Real Estate—Owned or Rented". For purposes of clarity, true and complete copies of Plaintiff's Exhibits one through five are annexed to this opinion as appendices one through five.

Plaintiff's Exhibits one through five reflect an ownership of 40 acres of real estate in Grant Township valued at either $140,000 (Plaintiff's Exhibits one, three and four), or $160,000.00 (Plaintiff's Exhibit two) or $80,000.00 (Plaintiff's Exhibit No. Five). Exhibits 1, 3 and 4 do not state how title to the Grant Township property is held, while Plaintiff's Exhibit No. 2 states it is held in the Defendant Rex's name only.

Plaintiff's Exhibit No. 5 dated February 12, 1985, states that certain undesignated property was held by "Rex and wife", with a "lifetime estate to father", the total acreage being 40 acres with a value of $40,-000.00.

Gardner testified that the life estate interest was indicated on the February 12, 1985 Financial Statement for the first time as between the time of the execution of the Financial Statement dated March 26, 1984 (Plaintiff's Exhibit No. 4), and the February 12, 1985 Financial Statement, Gardner had learned that the Defendants had been involved in certain litigation with the Community State Bank, and in checking the county records he had learned the Defendants had granted that Bank a second mortgage on 80 acres in Washington Township at a time when there was an oral agreement by the Defendants to grant the Plaintiff a second mortgage in said real estate.

Gardner stated that he then discussed the matter with the Defendants and when he attempted to take a mortgage on the 40 acres in question as collateral, the Defendant Rex advised him it was subject to a life estate in his father and in reality, the 40 acres referred to in Grant Township was in fact the Defendant Rex's one-fifth interest as a remainder in the 160 acres in which John Montgomery held the life estate. According to Gardner, this was done sometime between the execution of the fourth financial statement on March 26, 1984 and the fifth financial statement on February 12, 1985.

Gardner admits he filled in Schedule A of the February 12, 1985 Financial Statement in his own handwriting as the Plaintiff was experiencing difficulties with the Defendants and thus he deemed it very important at that point to set out more complete information as to the real estate owned by them. Gardner stated he set out the estimated full value of the real estate itself even though he knew it was subject to a life estate. He further stated that accordingly when the Defendant Rex signed the February 12, 1985 Financial Statement the Defendant Rex knew full well of the Defendant Rex's remainder interest, and the life estate of John Montgomery, and that he had asked the Bank's attorney prior thereto to try to obtain a mortgage thereon based on the $52,000.00 deficiency owing by the Defendants to the Plaintiff after a March 29, 1985 workout had been effected by the Plaintiff with the Defendants regarding the Defendant's indebtedness to the Plaintiff.

The Defendant's initial witness was one Ron Dusenberry (hereinafter: "Dusenberry"), a Kankakee, Illinois attorney, who initially met with the Defendants to discuss their bankruptcy generally.

Dusenberry stated he asked the Defendant Rex to provide him with a written list of all creditors and property at their initial conference. Both Defendants then returned to see him for a second conference.

Dusenberry related that he asked the Defendants if they had inherited any property in the last 6 months. The Defendant Rex's grandfather, Guy Montgomery, who had died was discussed and the Defendant Rex told him he had read Guy Montgomery's will, and he did not see whether he would inherit anything from him. Dusenberry also stated that the Defendant Rex also advised him that he had discussed the matter with his father John Montgomery and John advised him that the property in question was John's and that the Defendant Rex might inherit the same when he (John) died. At this time neither a copy of the will nor any of the documents as to the probate proceedings of Hazel Montgomery were provided by the Defendants to Attorney Dusenberry, nor were the financial statements given to the Bank by the Defendants.

Based on these discussions Dusenberry stated he was of the opinion that the Defendant Rex had no interest in the subject real estate, and accordingly he completed the schedules to not reflect any such interest, which was then filed on behalf of the Defendants without any changes.

Dusenberry further testified that after this adversary proceeding was filed the Defendants came back to him for additional consultation, and upon reviewing the February 12, 1985 Financial Statement he asked the Defendant Rex some general questions on the nature of a life estate and the Defendant Rex advised he thought he would receive the property in question through the will of his father, John Montgomery when he died. Dusenberry was

thus of the opinion that the Defendant Rex had no knowledge that he had an actual property interest in the subject property when the Defendants' petition and schedules were filed.

Dusenberry added that the deceased, testatrix of the subject property, Hazel Montgomery, was never discussed.

The Defendants next called Gardner as a witness. Gardner identified the Plaintiff's loan summary as to the Defendants (Defendant's Exhibit "A"), which reflected a workout with the Defendants. The summary is set out verbatim as follows:

3/29/85 LG  Took 20 acres at $1,500 per acre to apply to note in lieu of foreclosure. Took 100 shares of Communite State Bank at $125.00 a share credited to note. 80 shares of KenBancorp stock for total of $3,500 in liew (sic) of legal action. Loan of $52,017.77 for 12 months—Mr. Montgomery is to apply $10,000 from sale of bins plus an additional $10,000 from sale of remaining equipment.

Gardner admitted he did not know if the February 12, 1985, Financial Statement was actually signed before or after March 29, 1985, and could have been executed any time between February 12, 1985 and March 31, 1985, as at the time of execution the Debtor is normally asked by the Bank if he wants to show the financial statement dated as of the date of his financial condition, rather than when actually signed.

The Defendant Rex testified that although John Montgomery let him read Hazel Montgomery's will he never had a copy thereof or an attorney explain it to him, and that John Montgomery had told him it was his (John's) land and "not to worry about it."

The Defendant Rex stated he was under the impression that he had to outlive John Montgomery before he could receive any property interest. He further related that John Montgomery kept all books and records relating to the property, received all income and profits therefrom, and that he never received a tax bill or any accounting or probate notices or orders relating thereto. Defendant Rex stated that he assumed that if he received no tax bill he did not have an ownership interest in the property.

The Defendant Rex stated that only he initially conferred with Attorney Dusenberry, who prepared the Defendants' bankruptcy schedules, and when queried about his assets he advised Attorney Dusenberry that the Defendants had lost most of their assets to the Bank, and that he might inherit the property in question if he outlived his father, John.

The Defendant Rex asserted that on his second visit to Attorney Dusenberry he and the Defendant Amelia again discussed the subject property, but had no idea what a life estate was, had no idea he was an owner thereof, and that it was only after his second counsel, Attorney Engels, had him check the property records from the Court house and they were explained to him by Attorney Engels did he realize what a life estate was.

As to the Financial Statement dated February 12, 1985, the Defendant Rex stated that it was all in Gardner's handwriting except his signature, and that it was actually signed after March 29, 1985, or after the Defendants had transferred all their assets to the Plaintiff and that Gardner wanted the February 12, 1985, data on the financial statement to satisfy the Bank Examiners. He further denied ever discussing granting a mortgage of the subject property to the Plaintiff by the Defendants as asserted by Gardner.

As to the previous financial statements, (Plaintiffs Exhibits Nos. 1 through 4), which reflected the subject property, the Defendant Rex asserted that he had told Gardner he did not own the 40 acres, but that Gardner had told him it didn't make any difference and was instructed by Gardner to insert in those financial statements whatsoever Gardner told him to insert. The Defendant Rex admitted the Schedule A on these four previous financial statements were completed by him except the May 15, 1982 financial statement which was typed. He also stated that the information may have been routinely copied

from previous financial statements (the loan summary—Defendant's Exhibit "B" begins on January 12, 1979). No previous financial statements are known to actually exist.

The Defendant Rex stated he was born in 1929, thus making him 46 years of age at the time of the probate decree and approaching 56 when he signed the last financial statement. He related he can read and write and that his vocations at various times has been that of a laborer, farmer and truck driver.

The Defendant Rex admitted that between 1962 and 1976 he and the Defendant Amelia had been personally involved in the sale or purchase of real estate in some ten separate transactions (Plaintiff's Group Exhibit No. 9). However, the Defendant Rex averred that he had no sophistication in the matters of real estate, and most of these transactions were routine in nature, which were handled on his behalf by a broker.

The Defendant Amelia, a school teacher of some 29 years, stated she was not familiar with the contents of Plaintiff's Exhibits one, two, and three, and although she admitted to signing Plaintiff's Exhibit No. 4, she cannot recall why she was asked to sign and did not assist in filling it out.

She asserted that when Hazel Montgomery died, she read the will, but did not understand the same, thinking they would inherit the land some day, and the Defendants never attended any probate proceedings relating thereto.

The Defendant Amelia also testified that the Defendants advised Attorney Dusenberry they would inherit land some day, but did not know about the life estate.

### III

*Conclusions of Law and Discussion*

The relevant portions of 11 U.S.C. § 727 based on the Bank's allegations as set out in its complaint are as follows:

§ 727. **Discharge.**

(a) The court shall grant the debtor a discharge, unless—

\* \* \* \* \* \*

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account;

\* \* \* \* \* \*

At the outset, the Court would like to note some general principles applicable to dischargeability proceedings under 11 U.S. C. § 727.

Objections to Discharge are to be narrowly construed. *In re Long,* 774 F.2d 875, 879 (8th Cir.1985); *In re Black,* 787 F.2d 503, 505 (10th Cir.1986).

Not only are objections to discharge strictly construed against the objector, but they are liberally construed in favor of the debtor. *In re Switzer,* 55 B.R. 991, 997 (Bankr.N.D.1986); *In re Hargis,* 50 B.R. 698, 700 (Bankr.W.D.Ky.1985); *In re Shebel,* 54 B.R. 199, 202 (Bankr.D.Vt.1985); *In re Gordley,* 38 B.R. 630, 631 (Bankr.S.D. Ohio W.D.1984). The burden of proving each element of an exception to discharge rests on the creditor objecting to discharge. *In re Shebel,* 54 B.R. 199, 202, *supra.*

The purpose of the Bankruptcy Code is to discharge the honest debtor and it should be liberally applied to protect the debtor where there is no intent to violate its provisions. *In re Wolmer,* 57 B.R. 128, 132 (Bankr.N.D.Ill.1986).

■ While the law generally favors discharges in Bankruptcy, the Code should be construed to protect the debtor only in those cases where there is no intent to violate its provisions. *In re Greenwalt,* 48 B.R. 804, 805 (D.C.Colo.1985).

Bankruptcy Rule 4005 governs the procedure relating to dischargeability proceedings and provides as follows: "At the trial on a complaint objecting to discharge, the plaintiff has the burden of proving his objection". *See In re Martin,* 698 F.2d 883, 887 (7th Cir.1983).

■ The burden of proof is upon the party objecting to discharge and must be met with evidence that is clear and convincing. *In re Crawford,* 65 B.R. 378, 380 (C.D.Calif.1986); *In re Cohen,* 47 B.R. 871, 874 (Bankr.Fla.1985).

■ The burden of going forward with the evidence may shift from the creditor objecting to discharge who establishes a prima facie case; however, the ultimate burden of persuasion remains upon the creditor objecting to discharge. *In re Cycle Accounting Services*, 43 B.R. 264 (Bankr.Tenn.1984). As pointed out in the Advisory Committee note to Bankruptcy Rule 4005:

This Rule does not address the burden of going forward with the evidence. Subject to the allocation by the Rule of the initial burden of producing evidence and the ultimate burden of persuasion, the Rule leaves to the Court the formulation of Rules governing the shift of the burden of going forward with the evidence in light of considerations such as the difficulty or proving the nonexistence of a fact and of establishing a fact as to which evidence is likely to be more accessible to the Debtor than the objector.

*See, In re Martin*, 698 F.2d 883, 887, *supra*, where the Court held that while the ultimate burden of proof in a suit to bar a discharge under § 727 is on the plaintiff, the burden of coming forward with evidence shifts to the debtor when the plaintiff meets its burden of first going forward and also produces additional evidence of a kind that requires the debtor to make a credible explanation for his actions.

■ It is a general principle of Bankruptcy law that a complete disclosure of the Debtor's financial affairs is a prerequisite to obtaining a discharge. *In re Hargis*, 50 B.R. at 700, n. 7, *supra*.

■ A knowing and fraudulent omission from a sworn Statement of Affairs or Schedule may constitute a false oath sufficient to bar a discharge in bankruptcy. *In re Chalik*, 748 F.2d 616, 618 n. 3 (11th Cir.1984); *In re Bobroff*, 58 B.R. 950, 953 (Bankr.E.D.Pa.1986); *In re Shebel*, 54 B.R. at 202, *supra; In re Cook*, 40 B.R. 903, 906 (Bankr.N.D.Iowa 1984).

■ It is not enough to establish that the verified statement was false, nor even that the Debtor knew it was false. The objecting creditor must show that the false statement was made fraudulently, with specific intent to deceive. *In re Shebel*, 54 B.R. at 204–205, *supra.*

■ The Debtor's false oath must relate to a material matter before it will bar a discharge in Bankruptcy. *Matter of Agnew*, 818 F.2d 1284 (7th Cir.1984) (failure to disclose transfer of property did not warrant denial of discharge where it did not diminish property available to creditors).

■ Testimony as to property, which can have no bearing on the estate's condition, is not material in a proceeding under the Code and matters so trivial in nature as to have but little effect on the estate and upon creditors have been treated as immaterial. *See* 4 *Collier on Bankruptcy*, par. 727.04, p. 727–49 (L. King 15th Ed.) Thus, a debtor who fails to schedule worthless assets or assets of little or negligible value is not guilty of false oath or account so as to bar discharge; *In re Usoskin*, 56 B.R. 805, 814 (Bankr.E.D.N.Y.1985); *In re Lineberry*, 55 B.R. 510, 513 (Bankr.Ky.1985); *Matter of Yackley*, 37 B.R. 253 (Bankr.Mo. 1983); *In re Terkel*, 7 B.R. 801 (Bankr.S.D. Fla.1980).

■ The subject matter of a false oath is "material" and thus sufficient to bar discharge in bankruptcy, if it bears a relationship to the debtor's business transactions or estate, or concerns discovery of assets, business dealings or existence or disposition of his property. *In re Chalik*, 748 F.2d at 618, *supra.*

Thus, a debtor may not be able to escape denial of discharge for making false oath merely by asserting that the admittedly or falsely stated information concerned a worthless business relationship or holding. For example in *Chalik*, the debtor omitted all references to twelve corporations in which he was an officer, director or major stockholder. The debtor asserted that the omissions were not material as there was no indication that the concealed information would reveal assets available to creditors. The Court rejected that argument and held that the information was certainly material to determine his financial condi-

tion even if the property was worthless. *Id* at 618–619.

■ It makes no difference that the debtor did not intend to injure his creditors when he made a false statement as creditors are entitled to judge for themselves what will benefit and what will prejudice them. *In re Chalik*, 748 F.2d at 618, *supra.* If a debtor is uncertain as to whether certain assets are legally required to be included in his petition, it is his duty to disclose the assets so the question may be resolved. *In re Ingle*, 70 B.R. 979 (Bankr. E.D.N.C.1987). *Compare, In re Cummins*, 27 B.R. 148 (Bankr.N.D.Miss.1983) (Debtor's omission of certain wood stove kits did not warrant denial of discharge since possessory and ownership interests in parts kits were sufficiently inexplicit, ambiguous and vague).

■ The fundamental purpose of § 727(a)(4)(A) is to ensure that dependable information is supplied for those interested in the administration of the bankruptcy estate on which they can rely without the need for the trustee or other entrusted parties to dig out the true facts in examinations or investigations. *Matter of Hussan*, 56 B.R. 288 (Bankr.E.D.Minn.1985); *In re McDonald*, 50 B.R. 255 (Bankr.D.Mass. 1985).

The trustee and the creditors are entitled to honest and accurate signpost on the trail showing what property has passed through the Debtor's hands during the period prior to the bankruptcy. *In re Gonday*, 27 B.R. 428, 432 (Bankr.M.D.La.1983).

■ The materiality of the false oath does not require that the creditors were prejudiced by the false statement, but rather, the question of materiality depends on whether the false oath was pertinent to the discovery of assets or past transactions. *In re Chalik*, 748 F.2d at 618, *supra; Matter of Brooks*, 58 B.R. 462 (Bankr.W.D.Pa. 1986); *In re Bailey*, 53 B.R. 732 (Bankr. Ky.1982).

■ A simple mistake or inadvertence is not sufficient to prove that a false oath was made "knowingly and fraudulently" so as to warrant a denial of discharge, but

requisite intent is established when the cumulative effect of all falsehoods together evince a pattern of reckless and cavalier disregard for the truth. *In re Bobroff,* 58 B.R. 950, 953 (Bankr.E.D.Pa.1986); *In re Ligon,* 55 B.R. 250, 253 (Bankr.Tenn.1985); *Comprehensive Accounting Corp. v. Morgan,* 43 B.R. 264, 273 (Bankr.E.D.Tenn. 1984).

■ Reckless indifference to the truth is the equivalent of fraud for the purposes of barring discharge for making a false oath, but the fraudulent intent must be actual and not constructive. *In re Zahneis,* 75 B.R. 201, 203 (Bankr.S.D.Ohio 1987); *In re Ingle,* 70 B.R. at 983, *supra; In re Shebel,* 54 B.R. at 197, *supra; In re Chambers,* 36 B.R. 791, 793 (Bankr.Ky. 1984). The requisite intent may be predicated on evidence of a reckless and cavalier disregard for the truth. *In re Bobroff,* 58 B.R. 953, *supra.* However, the actual fraudulent intent required to warrant a denial of discharge pursuant to § 727 may be determined by circumstantial evidence or inferences drawn from a course of conduct. Since the Debtor will not voluntarily testify that intent was fraudulent, the Court has authority to deduce such intent from all facts and circumstances of the case. *In Matter of Brooks,* 58 B.R. 462, 465, *supra.* Thus, although constructive intent to defraud creditors is insufficient to warrant denial of discharge, an inference of actual intent may be drawn from extrinsic evidence of the debtor's actions. *In re White,* 63 B.R. 742, 744 (Bankr.N.D.Ill. 1986).

■ An amendment to the schedules cannot expunge the falsity of an oath. *In re Shebel,* 54 B.R. at 203, *supra; In re Cline,* 48 B.R. 581, 585 (Bankr.Tenn.1985). While a false answer is not cured by subsequent testimony during bankruptcy administration, a subsequent voluntary disclosure may be considered as some evidence of innocent intent. *In re Glickman,* 64 B.R. 616, 618 (Bankr.S.D.Fla.1986) *citing, In re Tabibian* 289 F.2d 793, 797 (2d Cir. 1961).

Generally, a debtor who acts in reliance on the advice of his attorney lacks the required intent to deny discharge of his debts; however, such reliance must be reasonable. *In re Ellingson*, 63 B.R. 271, 276 (Bankr.N.D.Iowa 1986) *citing In re Adeeb*, 787 F.2d 1339, 1343 (9th Cir.1986), and *In re Bateman*, 646 F.2d 1220, 1224 (8th Cir. 1981). *See, e.g., Matter of Patterson*, 70 B.R. 124 (Bankr.W.D.Mo.1986) (failure to disclose funds from probate estate on advice of counsel that it was not property of a bankruptcy estate did not justify denial of discharge). The Court in *Patterson* noted that when intention is an issue, advice of counsel is a factor to consider unless the party should know that the failure to schedule the asset is forbidden by law. *Id.* at 128. *See also, In re Collins*, 19 B.R. 874, 878 (Bankr.M.D.Fla.1982); *Ashton v. Sentney*, 145 F.2d 719 (9th Cir.1944) (where spendthrift trust of which bankrupt was beneficiary was long and complicated for a layman, and bankrupt acted on advise of counsel in failing to schedule his interest therein, finding of referee that there was no false oath not clearly erroneous); *Dilworth v. Boothe*, 69 F.2d 621 (5th Cir.1934) (Bankrupt omitted claimed equitable interest in Mineral Royalties from his schedules or advice of counsel. Held: when bankrupt acts on advice of counsel, after full disclosure of the facts by him fraudulent intent presumed to be absent); *Thompson v. Eck*, 149 F.2d 631 (2d Cir.1945) (Bankrupt failed to schedule partnership interest in automobile repair business as well as certain partnership property. Court affirmed referee's finding of no actual fraudulent intent based on evidence that the bankrupt made out his schedules on his attorney's advice); *In re Mascolo*, 505 F.2d 274 (1st Cir.1974) (explanation by bankrupt that he has acted upon advice of counsel who was in turn fully aware of all relevant facts generally rebuts an inference of fraud). *In re Soroko*, 34 F.Supp. 825 (S.D. N.Y.1940) (the statement of facts by a bankrupt to his attorney may be a full and fair disclosure as will negate any fraudulent intent, if the bankrupt stated all of the facts which he and his attorney believed relevant. Ignorance of the law on the part of a bankrupt and his attorney may lead the attorney to advise his client without a knowledge of relevant information in the possession of the client. This may result in the bankrupt's statement under oath being false, but it does not itself render the statements intentionally false. If however, the bankrupt did not actually and in good faith rely on his attorney's advice, he cannot take advantage thereof); *In re MacFarlane*, 45 F.2d 994 (9th Cir.1930) (District Court affirmed finding of special master who found that bankrupt who did not schedule certain trust property should not be denied a discharge based on false oath when she was advised by counsel she had no interest in the trust estate and should not be scheduled, that her intent was open and notorious, that no creditor was mislead, and that the claims of creditors grew out of dealings in some kind with the trust property in question). *Compare, Sinclair v. Butt*, 284 F. 568 (8th Cir.1922) (Bankrupt must be held to have intended natural and necessary consequences of his acts. He is not warranted in relying upon the advice of counsel with reference to plan, palpable and transparent facts. It was not within the province of the bankrupt and his counsel to say that the amount involved was small, and therefore should be disregarded. Held: Discharge denied where debtor scheduled no assets but had small amount of wages due, a watch, ring, and some wearing apparel); *In re German*, 193 F.Supp. 948 (S.D.Ill.1961) (District Court affirmed finding of referee that omission of transfer of automobile by debtor on statement of affairs was not a false oath when debtor relied on advice of counsel that only transfers of real estate be listed).

At the outset it must be kept in mind that although much of the evidence in this case focused around the financial statement given by the Defendant Rex or the Defendants to the Plaintiff, the Court is not adjudicating the issue of whether the Defendant gave only the Plaintiff a false financial statement and whether as a result thereof the Defendants' specific indebtedness to the Plaintiff is nondischargeable pursuant to 11 U.S.C. § 523. Rather, the focus is whether the Defendants were

guilty of intentionally making a false oath in their bankruptcy schedules as to a material fact so that the Defendants' Chapter 7 Trustees and all of the Defendants' creditors were knowingly denied the opportunity to investigate the Defendants' affairs and liquidate all non-exempt assets. However, the fact that these financing statements were executed by the Defendant Rex or the Defendants is indeed relevant evidence as to whether a false oath was committed in the schedule of assets.

It is clear that the Defendants' original schedules (or a least the schedules as they relate to the Defendant Rex) were false in that the Defendant Rex's remainder interest in the property in question was omitted therefrom. It is also clear that the omission was material in that the agreed value of the Defendant Rex's remainder interest in the real estate was $15,000.00.

The crucial unresolved issue is whether the Defendant Rex or the Defendants *knowingly* made a false oath or whether they were so recklessly indifferent as to the truth of their affairs as to constitute fraud. As noted above however, constructive fraud or fraud implied in law will not carry the day for the Plaintiff. Nevertheless, it is rare that any Debtor will expressly admit to an intentional omission under oath so that direct evidence of scienter is available, and thus, of necessity, the Court is usually relegated to determining the bankrupts state of mind at the time of the filing of the schedules by the facts and circumstances and extrinsic evidence surrounding the debtor's actions.

A crucial aspect of this case to the court is whether after the Defendant Rex admittedly signed the February 12, 1985 financial statement, which was filled out by Gardner, and which expressly recites that both Defendants owned some undesignated 40 acres in Grant Township subject to a life estate, did he have an affirmative duty to disclose this on his schedules even though, at least according to his testimony, in his own mind he did not believe this to be the case. The issue is further complicated by the testimony of Attorney Dusenberry that the real estate in question was in fact discussed and based on his analysis of the situation he in good faith (though erroneously) came to the conclusion that the Defendants had no vested interest in the subject real estate, inasmuch as all of the relevant facts were not placed before Attorney Dusenberry by the Defendants.

It is established that a good faith reliance on advice of counsel may be a defense to a complaint alleging false oath. However, the attorney must be appraised of known all relevant facts and the reliance by the Debtors on counsel's opinion must in fact be reasonable. If there is any doubt or uncertainty whatsoever as to a possible interest in any property, the asset should be scheduled with an appropriate explanation and the trustee, the creditors, and the Court can then make an independent determination as to whether a given asset should or should not be included in a Debtor's estate.

It is true, that in a layman's mind the legal theories relating to fee simple, vested interest, life estate and remainder interest, are somewhat ethereal and complicated concepts, and reliance on advice of counsel is required in many instances relating to such interests. The Defendants should not be harshly penalized for their ignorance of the applicable law with regard to these property concepts. However, counsel must have been informed of all the relevant facts that the Defendants had actual knowledge of before the reliance is reasonable. In addition, even if the Defendants did not intentionally omit certain facts in their conferences with counsel, they could not act so recklessly and indifferently as to their state of affairs that substantial assets are not disclosed. The existance of this property interest could have easily be ascertained by checking their own books and records or the public records.

The ultimate issue here appears to be one of credibility, given all of the surrounding facts and circumstances relating to the property in question.

Although, the Defendant Rex may have erroneously construed the situation to be one wherein he had no legal interest whatsoever in the property, notwithstand-

ing the fact that the first four financial statements he signed clearly indicate to the contrary, he was clearly put on notice at the time of the execution of the February 12, 1985, financial statement that the Bank deemed he had an interest therein, and the life estate of the father was expressly recited therein. At this point in time, the Defendant Rex knew, or at least he knew the Bank believed he had an interest in the property and thus, he had an obligation to at least disclose a possible or disputed property interest even though he was uncertain in his own mind as to the exact legal nature of that property interest.

The reliance by the Defendant Rex on the advice of counsel was not reasonable in that Attorney Dusenberry was not apprised of all the necessary facts which at that time were in the possession of the Defendants to come to a correct conclusion. There is no evidence that the will and the probate proceedings of Hazel Montgomery were ever discussed by the Defendants with Attorney Dusenberry. Neither is there any evidence that prior to this adversary being filed that the Defendants advised Attorney Dusenberry of the five financial statements which listed the property in question or the conversation relating thereto with Gardner. If the Defendants had done so, one would think that Attorney Dusenberry's advice as to whether the real estate should be scheduled would have been substantially different.

Accordingly, the Court having reviewed the record, the applicable law, and having had an opportunity to judge the credibility of the witnesses, finds that the Defendant Rex perpetrated a false oath in his schedules by intentionally excluding his remainder interest in said real estate, or at the very least based on the facts and circumstances of the case, his conduct constituted such a reckless indifference to the truth as to be tantamount to constituting the requisite fraudulent intent, and thus he should be denied his general discharge in bankruptcy pursuant to 11 U.S.C. § 727(a)(4). The Plaintiff presented a prima facie case with clear and convincing evidence. Although the Defendant Rex came forward with evidence in response thereto, the ex-

planation given by him was not credible and his assertion that he relied on the advice of counsel does not rebut the inference of fraud as that advice was not made with a full disclosure of the facts in good faith or reasonably relied on.

■ According to the probate records of Hazel Montgomery, and the title search as to the real estate, the Defendant Amelia has no property interest whatsoever in the property in question and thus, has not been guilty of a false oath as to her schedule of assets. *See, e.g., Fellows v. Freudenthal,* 102 F. 731 (7th Cir.1900) (Held: When property was held in wife's name, failure to include property in Debtor's schedules does not constitute a false oath unless it is proved that the Debtor had an interest in the property and knew of such fact).

■ Marriage does not in itself create an agency relationship between spouses, *Bradford v. Bentonville Farm Supply,* 510 N.E.2d 745, 747 (Ind.App. 1st Dist. 1987). The Defendants did not file a partnership petition. There is no evidence that the Defendant Amelia acted as the actual agent for the Defendant Rex. They filed a joint case as permitted by 11 U.S.C. § 302(b). Although a husband and wife may file a joint bankruptcy petition they are in fact two separate debtors. *In re Arnold,* 33 B.R. 765 (Bankr.E.D.N.Y.1983). And just because a joint case is filed by a husband and wife, this does not create a joint estate. Section 302(b) provides that after the commencement of the joint case, the Court shall determine the extent, if any, the Debtors' estates should be consolidated.

Thus, it does not follow that because the Defendant Amelia joined with the Defendant Rex in filing a joint case, and the Defendant Rex committed a false oath that she *ipso facto* also committed a false oath. The Court thus cannot impute the false oath of the Defendant Rex to the Defendant Amelia by any theory of vicarious liability arising out of their marital relationship or otherwise.

It is therefore,

ORDERED, ADJUDGED and DE-CREED, that the Defendant Rex be denied his general discharge in bankruptcy pursuant to 11 U.S.C. § 727(a)(4). And it is further

ORDERED, ADJUDGED, and DE-CREED, that the Plaintiff take nothing by its complaint as to the Defendant Amelia, and that she be granted her general discharge in bankruptcy.

## APPENDIX 1

**FINANCIAL STATEMENT**
(Agricultural)

☒ Individual
☐ Partnership
☐ Corporation

Phone: 2755911

By Name: REX MONTGOMERY    Address: RR-2  BROOK

To:

Date of Statement: 3-1-30

| ASSETS | | LIABILITIES | |
|---|---|---|---|
| **CURRENT ASSETS** | | **CURRENT LIABILITIES (Due within 12 Months)** | |
| Cash | 39,000 — | Notes Payable (to whom, maturity, purpose) | |
| Crops or Feed on Hand (Schedule F) | 53,200 — | | 45,000 — |
| Livestock Held for Sale (Schedule D) | 1,300 — | Metropolitan | 40,000 — |
| Marketable Bonds and Securities (Schedule C) | 39,925 — | | |
| Accounts Receivable (Custom Work, etc.) | 2500 — | Current Portion Intermediate Debt | |
| Notes Receivable | | Current Portion Long Term Debt | |
| | | Accrued Interest | |
| Cash Invested in Growing Crops | | Accounts Payable | |
| Hedging Accts. | | | |
| Other Current Assets | | Taxes • Income, Real and Personal | |
| | | Rent due | |
| | | Other Current Liabilities | |
| TOTAL—Current Assets | 135,725.00 | TOTAL—Current Liabilities | 85,000 |
| **INTERMEDIATE TERM ASSETS** | | **INTERMEDIATE TERM LIABILITIES** | |
| Cash Value Life Insurance (Schedule B) | 18,000 — | Portion of loans of more than 12 Months on: | |
| Machinery, Equipment, Trucks (Schedule G) | 164,000 — | • Machinery and Equipment | 10,000 |
| Cars | 77,500 — | | |
| Breeding Stock (Schedule E) | | • Breeding Stock | |
| Securities (not readily marketable) (Schedule C) | | | |
| Household Furnishings and Equipment | | • Life Insurance (Schedule B) | |
| Recreational Equipment | | • Household Furnishings and Equipment | |
| Other Intermediate Assets | | Other Intermediate Term Liabilities | |
| TOTAL—Intermediate Assets | 259,500.00 | TOTAL—Intermediate Liabilities | 10,000 |
| **LONG TERM OR FIXED ASSETS** | | **LONG TERM LIABILITIES** | |
| Farm Real Estate (Schedule A) | 420,000 — | Real Estate Mortgages (Schedule A) • Except | |
| | | that portion listed under Current Liabilities | 40,000 |
| Other Real Estate (Schedule A) | | TOTAL—Long Term Liabilities | 40,000 |
| | | TOTAL LIABILITIES | 95,000 |
| TOTAL—Fixed Assets | 420,000 | PRESENT NET WORTH | 815,225 |
| TOTAL ASSETS | 815,225 | TOTAL LIABILITIES & NET WORTH | 910,000 |

**SCHEDULE A—Real Estate—Owned or Rented**

| Title Held By | Description | Acres | Purch. Price | Present Value | Mortgage | Mortgage Holder | Annual Payment |
|---|---|---|---|---|---|---|---|
| Owned | GRANT TWP | 40 | 140,000 | $ | $ | | |
| | WASH TWPS-24T25R9 | 50 | 50,000 | | | | |
| | KAY CO KEETON S-T1C-3L-R5 | 20 | 70,000 | | | | |
| Rented | | | Type Lease | | | Expires | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

For purpose of securing credit from time to time this statement is furnished and is certified to be true and correct. I (or We) agree to notify said bank promptly of any material change herein.

Signature                    Date                    Signature: R.J. Montgomery        Date: 3-1-30

| | | | | |
|---|---|---|---|---|
| 1. Your Age **50** | Physical Condition **Good** | 5. Are any suits pending against you? | | Yes **No** |
| 2. Name of Spouse **Maxine** | | 6. Do you carry health, accident or hospital insurance? | | **Yes** No |
| 3. Ages of Children at Home | | 7. Do you carry insurance on bldgs., equip. or livestock? | | **Yes** No |
| 4. Have you been involved in Bankruptcy? **No**  Yes No | | 8. Do you carry crop insurance? | | **Yes** No |

List off Farm Income: South Newton School $818500
BEL Transportation $17500

If a Partnership or Corporation Give Detail:    Address    Per Cent Interest

Principales

### SCHEDULE B—Life Insurance (include credit life)

| Insurance Company | Beneficiary | Face Value | Cash Value Amt. | Borrowed Due | From Whom |
|---|---|---|---|---|---|
| Metropolitan Life | Rex | 50,000 | 79 - TERM | | |
| Wash. Nat'l Life | Maxine | 50,000 - | 18,000 - | | |

### SCHEDULE C—Bonds and Securities (in your name)

| No. of Shares or Par Value Bonds | Description | Market Value |
|---|---|---|
| 49 Shares | Kentland Bank | 8525 - |
| 100 Shares | C/S/B | 30,000 - |
| 20 Shares | United Life | 1350 - |
| | TOTAL | 39,925 - |

### SCHEDULE D—Livestock Held for Sale

| Number | Description | Wt. | Price | Value |
|---|---|---|---|---|
| 20 | Sheep | | | 1000 - |
| 1 | Horse | | | 300 - |
| | | | TOTAL | 1300 - |

### SCHEDULE E—Breeding Stock

| Number | Description | Age | Wt. | Price | Value |
|---|---|---|---|---|---|
| | | | | | |
| | | | | TOTAL | |

### SCHEDULE F—Crops or Feed on Hand or Growing (your share only)

| Crop or Feed | Amt. on Hand Bu. or Tons | Unit Price | Total Value | Acres in Crops Owned | Rented |
|---|---|---|---|---|---|
| Beans | 3000 Bu | | 18,000 - | | |
| Corn | 120 Acres | | 31,000 - | 120 | |
| Beans | 20 Acres | | 4200 - | 20 | |
| | | | TOTAL 53,200 - | | |

CASE NO. 86-4067

American State Bank

vs

Debtors

PLAINTIFF'S EXHIBIT #1

DATE 9/15/87 IDEN.

DATE 9/15/87 EVID.

BY P. Gross Deputy Clerk

Form 18A V

Reorder through Pantagraph Office Equipment & Supplies Box 1305, Bloomington, Ill. 61701

### SCHEDULE G—Machinery and Equipment

| No. | Make | Kind | Model | Year | Description | Value |
|---|---|---|---|---|---|---|
| | 450 | Tractor | 30 | 71 | | 1400 |
| | | | AC | 78 | | 2100 |
| | | 17 | AC | 55 | | 1100 |
| | | M | LNT | 53 | | 1200 |
| | | Combine | 715 | 74 | GAS | 26,000 |
| | | Cornhead | 741 | | 4 Row | 5000 |
| | | C. Picker | | | | |
| | | Planter | 6 Row | 74 | 36 IN. | 4000 |
| | | Plow | | | 5 Bottom | 2800 |
| | | | | | 7 Bottom | 3500 |
| | | R. Hoe | 6 Row | | | 2800 |
| | | Chsl. Plow | 12 Ft. | | | 1500 |
| | | Disc | 14-16 Ft. | | | 3500 |
| | | Cult. | 2 | 72 | 6 Row | 4200 |
| | | Fld. Cult. | 14 Ft | | | 1250 |
| | | Harrow | 14 Ft | | | 600 |
| | | Drill | | | | |
| | | Man. Sp. | | | | |
| | | Wagons | 3 | 74 | M-W-300 | 3100 |
| | | For. Harv. | | | | |
| | | Mower | | | | |
| | | Baler | | | | |
| | | Rake | | | | |
| | | Sprayer | Bean | 73 | 21 Ft. | 2100 |
| | | Elev. | | | | |
| | | Augers | 3 | 74 | 8-8-10" | 1000 |
| | | Gr. Dryer | 10-1100 | 70 | 550 | 3400 |
| | | Trucks | White | 77 | 350 | 3500 |
| | | | Hayes | 75 | 40 Ft. | 1500 |
| | | Lvstk. Eq. | | | | |
| | | Lwn. Mower | AC | 75 | 36" | 500 |
| | | Shp. Equip. | | | | 500 |
| | | | | | TOTAL | 145,305.00 |

## APPENDIX 2

### FINANCIAL STATEMENT
(Agricultural)

☒ Individual
☐ Partnership
☐ Corporation

Phone:

By. Name: REX MONTGOMERY    Address: RR2  BROOK, IN.

To:                                    Date of Statement 5/2/81

| ASSETS | | | LIABILITIES | |
|---|---|---|---|---|
| **CURRENT ASSETS** | | | **CURRENT LIABILITIES (Due within 12 Months)** | |
| Cash | 15,000 | | Notes Payable (to whom, maturity, purpose) | |
| Crops or Feed on Hand (Schedule F) | 2500 | | COMMUNITY STATE BANK | 30,000 |
| Livestock Held for Sale (Schedule D) | | | AMERICAN STATE BANK | 43,000 |
| Marketable Bonds and Securities (Schedule C) | 70,000 | | | |
| Accounts Receivable (Custom Work, etc.) | 4500 | | | |
| | | | Current Portion Intermediate Debt | |
| Notes Receivable | | | Current Portion Long Term Debt | |
| | | | Accrued Interest | 2500. |
| Cash Invested in Growing Crops | 11,000 | | Accounts Payable | 3500 |
| Hedging Accts. | | | | |
| Other Current Assets | | | Taxes • Income, Real and Personal | PAID |
| | | | Rent due | |
| | | | Other Current Liabilities | |
| TOTAL—Current Assets | 103,000 | | TOTAL—Current Liabilities | 79,000 |
| **INTERMEDIATE TERM ASSETS** | | | **INTERMEDIATE TERM LIABILITIES** | |
| Cash Value Life Insurance (Schedule B) | 15,000 | | Portion of loans of more than 12 Months on: | |
| Machinery, Equipment, Trucks (Schedule G) | 178,750 | | • Machinery and Equipment | 12,000 |
| Cars | 20,000 | | | |
| Breeding Stock (Schedule E) | | | • Breeding Stock | |
| Securities (not readily marketable) (Schedule C) | | | | |
| Household Furnishings and Equipment | 25,000 | | • Life Insurance (Schedule B) | |
| Recreational Equipment | 12,000 | | • Household Furnishings and Equipment | |
| Other Intermediate Assets | | | Other Intermediate Term Liabilities | |
| TOTAL—Intermediate Assets | 250,750 | | TOTAL—Intermediate Liabilities | 12,000 |
| **LONG TERM OR FIXED ASSETS** | | | **LONG TERM LIABILITIES** | |
| Farm Real Estate (Schedule A) | 560,000 | | Real Estate Mortgages (Schedule A) • Except | 100,000 |
| | | | that portion listed under Current Liabilities | |
| Other Real Estate (Schedule A) | | | | |
| | | | TOTAL—Long-Term Liabilities | 100,000 |
| TOTAL—Fixed Assets | 560,000 | | TOTAL LIABILITIES | 191,000 |
| TOTAL ASSETS | 913,750 | | PRESENT NET WORTH | 722,750 |
| | | | TOTAL LIABILITIES & NET WORTH | 913,750 |

**SCHEDULE A—Real Estate—Owned or Rented**

| Title Held By | Description | Acres | Purch. Price | Present Value | Mortgage | Mortgage Holder | Annual Payment |
|---|---|---|---|---|---|---|---|
| Owned | | | | $ | $ | | |
| REX & MAXINE | NW SEC 24 T 28 N R4W Newton | 80 | | 320,000 | 100,000 | | 6,000 |
| REX & MAXINE | S-19 T 32 R5 Jasper | 20 | | 80,000 | | | |
| REX GRANT TWP | | 40 | | 160,000 | | | |
| Rented | | | Type Lease | | | Expires | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

For purpose of securing credit from time to time this statement is furnished and is certified to be true and correct. I (or We) agree to notify said bank promptly of any material change herein.

Signature: Rex Montgomery    Date: 1951    Signature: _____    Date: _____

**964**

| | | | |
|---|---|---|---|
| 1. Your Age — Physical Condition | | | 5. Are any suits pending against you? | Yes (No) |
| 2. Name of Spouse MAXINE | | 6. Do you carry health, accident or ... insurance? | (Yes) No |
| 3. Ages of Children at Home NONE | | 7. Do you carry insurance on bldgs., equip. or livestock? | (Yes) No |
| 4. Have you been involved in Bankruptcy? Yes (No) | | 8. Do you carry crop insurance? | (Yes) No |

Last off Farm Income: REX ~ $50,000
MAXINE ~ $20,000

| If a Partnership or Corporation Give Detail: | Address | Per Cent Interest |
|---|---|---|
| Principals | | |

## SCHEDULE B—Life Insurance (include credit life)

| Insurance Company | Beneficiary | Face Value | Cash Value Amt. | Borrowed Due | From Whom |
|---|---|---|---|---|---|
| METROPOLITAN | WIFE | 50,000 | 10,000 | | |
| Washington Nat. Life | | 10,000 | 5,000 | | |
| SUN NATIONAL | | 10,000 | — | | |

## SCHEDULE C—Bonds and Securities (in your name)

| No. of Shares or Par Value Bonds | Description | Market Value |
|---|---|---|
| 100 SHARES | COMMUNITY STATE BANK | 40,000 |
| 100 SHARES | KENTLAND BANK | 30,000 |
| | TOTAL | 70,000 |

## SCHEDULE D—Livestock Held for Sale

| Number | Description | Wt. | Price | Value |
|---|---|---|---|---|
| | | | | |
| | | TOTAL | | |

## SCHEDULE E—Breeding Stock

| Number | Description | Age | Wt. | Price | Value |
|---|---|---|---|---|---|
| | | | | | |
| | | | TOTAL | | |

## SCHEDULE F—Crops or Feed on Hand or Growing (your share only)

| Crop or Feed | Amt. on Hand Bu. or Tons | Unit Price | Total Value | Acres in Crops Owned | Rented |
|---|---|---|---|---|---|
| BEANS | | $9.00 | $63,000 | 140 | |
| | | TOTAL | 63,000 | | |

CASE NO. 86-4067
American State Bank
VS. Debtors
PLAINTIFF'S EXHIBIT #2
DATE 9/15/87 IDEN.
DATE 9/15/87 EVID.
BY P. Gross
Deputy Clerk
AO 386

## SCHEDULE G—Machinery and Equipment

| No. | Make | Kind | Model | Year | Description | Value |
|---|---|---|---|---|---|---|
| | AC | Tractor | 5020 | | | 8500 |
| | AC | 190 | | | | 7500 |
| | AC | D17 | | | | 3500 |
| | AC | 7020 | | | | 41000 |
| | JD | 4520 | | | | 9600 |
| 1 | AC | Combine | F | 1970 | | 25000 |
| | | C. Picker | | | | |
| 1 | JD | Planter | 7000 | 80 | 8 Row | 14000 |
| 1 | AC | Plow | 5000 | 74 | 5 Bottom | 5600 |
| 1 | IAC | IHC | | 77 | 7 Bottom | 4600 |
| 1 | JD | R. Hoe | | | | |
| 1 | AC | Chsl. Plow | INTERAC | 77 | | 4500 |
| 1 | KEWANEE | Disc | 18FT | 74 | | 4600 |
| 1 | MILLER | | 18FT | 77 | | 8500 |
| 1 | JD | Cult. | 6 Row | 70 | | 3500 |
| 1 | JD | | 6 Row | 69 | | 2250 |
| 1 | JD | Fld. Cult. | FLEX | 77 | | 5500 |
| | | Harrow | | | | |
| | | Drill | | | | |
| | | Man. Sp. | | | | |
| 4 | M-W | Wagons | 300 | 77 | | 6500 |
| | | For. Harv. | | | | |
| | | Mower | | | | |
| | | Baler | | | | |
| | | Rake | | | | |
| 1 | BRONNER | Sprayer | 16 Row | 77 | | 5700 |
| | | Elev. | | | | |
| 3 | MAYRATH | Augers | 38 FT | 78 | | 7200 |
| 1 | ORVILLE | Gr. Dryer | 550 | 70 | | 6200 |
| 1 | R195 | Trucks | IHC | 60 | | 4500 |
| | | Lvstk. Eq. | | | | |
| | | Lwn. Mower | | | | |
| | | Shp. Equip. | | | | |
| | | | | | TOTAL | 184950 |

Form IBA 9

Reorder through Pantagraph Office Equipment & Supplies
Box 1305, Bloomington, Ill. 61701

## APPENDIX 3

# FINANCIAL STATEMENT
### (Agricultural)

☐ Individual
☐ Partnership
☐ Corporation

Phone: 275-5911

By: Name    Rex Montgomery

Address    Rt 2, Box 25, Brook, IN  47922

To:    AMERICAN STATE BANK

Date of Statement    5/15/82

| ASSETS | | | LIABILITIES | |
|---|---|---|---|---|
| **CURRENT ASSETS** | | | **CURRENT LIABILITIES (Due within 12 Months)** | |
| Cash | | 2,500 | Notes Payable (to whom, maturity, purpose) | |
| Crops or Feed on Hand (Schedule F) | | 12,000 | CSB | 62,000 |
| Livestock Held for Sale (Schedule D) | | | ASB | 80,000 |
| Marketable Bonds and Securities (Schedule C) | | 70,000 | | |
| Accounts Receivable (Custom Work, etc.) | | 3,500 | | |
| | | | Current Portion Intermediate Debt | |
| Notes Receivable | | | Current Portion Long Term Debt | |
| | | | Accrued Interest | |
| Cash Invested in Growing Crops | | 12,000 | Accounts Payable | |
| | | | | |
| Hedging Accts. | | | | |
| Other Current Assets | | | Taxes *Income, Real and Personal* | |
| | | | Rent due | |
| | | | Other Current Liabilities | |
| | | | | |
| TOTAL—Current Assets | | 100,000 | TOTAL—Current Liabilities | 142,000 |
| **INTERMEDIATE TERM ASSETS** | | | **INTERMEDIATE TERM LIABILITIES** | |
| Cash Value Life Insurance (Schedule B) | | 25,500 | Portion of loans of more than 12 Months on: | |
| Machinery, Equipment, Trucks (Schedule G) | | 167,800 | • *Machinery and Equipment* | 12,000 |
| Cars & truck | | 42,000 | | |
| Breeding Stock (Schedule E) | | | • *Breeding Stock* | |
| Securities (not readily marketable) (Schedule C) | | | | |
| Household Furnishings and Equipment | | 28,000 | • *Life Insurance (Schedule B)* | |
| Recreational Equipment | | 6,000 | • *Household Furnishings and Equipment* | |
| Other Intermediate Assets | | | Other Intermediate Term Liabilities | |
| TOTAL—Intermediate Assets | | 269,300 | TOTAL—Intermediate Liabilities | 12,000 |
| **LONG TERM OR FIXED ASSETS** | | | **LONG TERM LIABILITIES** | |
| Farm Real Estate (Schedule A) | | 515,000 | Real Estate Mortgages (Schedule A) • *Except* | 100,000 |
| | | | *that portion listed under Current Liabilities* | |
| Other Real Estate (Schedule A) | | | TOTAL—Long Term Liabilities | 100,000 |
| | | | TOTAL LIABILITIES | 254,000 |
| TOTAL—Fixed Assets | | 515,000 | PRESENT NET WORTH | 639,300 |
| TOTAL ASSETS | | 884,300 | TOTAL LIABILITIES & NET WORTH | 884,300 |

**SCHEDULE A—Real Estate—Owned or Rented**

| Title Held By | Description | Acres | Purch. Price | Present Value | Mortgage | Mortgage Holder | Annual Payment |
|---|---|---|---|---|---|---|---|
| Owned | NW, Sec. 24, T28N, R9W, NESec. | 80 | 300,000 | | $ 90,000 | | 6,000 |
| | S19, T32, R5, Jasper | 20 | 75,000 | | | | |
| | Grant Twp. | 40 | 140,000 | | | | |
| Rented | | | | Type Lease | | Expires | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

For purpose of securing credit from time to time this statement is furnished and is certified to be true and correct. I (or We) agree to notify said bank promptly of any material change herein.

Signature _R. Montgomery_    Date: 5/15/82    Signature _____    Date: _____

| | | |
|---|---|---|
| Financial Condition OK | 5. Are any suits pending against you? | Yes No |
| 2. Name of Spouse  Maxine | 6. Do you carry health, accident, hospital insurance? | Yes No |
| 3. Ages of Children at Home | 7. Do you carry insurance on bldgs, equip. or livestock? | Yes No |
| 4. Have you been involved in Bankruptcy?  Yes No | 8. Do you carry crop insurance? | Yes No |

List all Farm Income:  Rex  50,000  
Maxine  24,000

| If a Partnership or Corporation Give Detail: | Address | Per Cent Interest |
|---|---|---|
| Principals | | |

### SCHEDULE B—*Life Insurance* (include credit life)

| Insurance Company | Beneficiary | Face Value | Cash Value Amt. | Borrowed Due | From Whom |
|---|---|---|---|---|---|
| Metropolitan | Wife | 50,000 | 10,000 | | |
| Washington Nat Life | Wife | 40,000 | 11,000 | | |
| Sun National | Wife | 10,000 | 4,500 | | |

### SCHEDULE C—*Bonds and Securities* (in your name)

| No. of Shares or Par Value Bonds | Description | Market Value |
|---|---|---|
| | | |
| | | |
| | | |
| | TOTAL | |

### SCHEDULE D—*Livestock Held for Sale*

| Number | Description | Wt. | Price | Value |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | TOTAL | | | |

### SCHEDULE E—*Breeding Stock*

| Number | Description | Age | Wt. | Price | Value |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | TOTAL | | | | |

### SCHEDULE F—*Crops or Feed on Hand or Growing* (your share only)

| Crop or Feed | Amt. on Hand Bu. or Tons | Unit Price | Total Value | Acres in Crops Owned | Rented |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |

### SCHEDULE G—*Machinery and Equipment*

| No. | Make | Kind | Model | Year | Description | Value |
|---|---|---|---|---|---|---|
| | AC | Tractor | 5020 | | | 9,000 |
| | AC | | 190 | | | 6,900 |
| | AC | | D17 | | | 3,700 |
| | AC | | 7020 | | | 37,800 |
| | JD | | 4520 | | | 8,650 |
| | AC | Combine | F | 1970 | | 22,500 |
| | | Planter | | | | |
| 1 | JD | C. Kicker | 7000 | 1980 | | 16,000 |
| 1 | AC | Planter | 5 | 1979 | | 4,300 |
| 1 | III | Plow | 7 | 1977 | | 5,100 |
| 1 | JD | R. Hoe | | 1977 | | 4,200 |
| 1 | AC | Chsl. Plow | Intelal | 1976 | | 4,100 |
| 1 | Miller | Disc | | 1977 | | 2,800 |
| 1 | Kewanee | | | 1976 | | 8,100 |
| 1 | JD | Cult. | 6 row | 1970 | | 1,400 |
| | | | 8 row | 1979 | | 4,600 |
| 1 | JD | Fld. Cult. | Flex | 1978 | | 5,700 |
| | | Harrow | | | | |
| | | Drill | | | | |
| | | Man. Sp. | | | | |
| 3 | NW | Wagons | 300 | BU | | 3,750 |
| | | For. Harv. | | | | |
| | | Mower | | | | |
| | | Baler | | | | |
| | | Rake | | | | |
| 1 | Broyaill | Sprayer | 16 row | | | 4,750 |
| | | Elev. | | | | |
| 3 | Mayrath | Augers | | | | 5,600 |
| 1 | Phall | Gr. Dryer | 550 | 1970 | | 5,100 |
| 1 | R195 | Trucks | IH | 1960 | | 3,750 |
| | | Lvstk. Eq. | | | | |
| | | Lwn. Mower | | | | |
| | | Shp. Equip. | | | | |
| | | | | | TOTAL | 167,800 |

CASE NO. 86-4067  
American State Bank  
vs.  Debtors  
PLAINTIFF'S EXHIBIT #3  
DATE 9/15/87  IDEN.  
DATE 9/15/87  EVID.  
BY P. Gross  Deputy Clerk  
AO 386

Form 18A 9

Reorder through Pantagraph Office Equipment & Supplies
Box 1305, Bloomington, Ill 61701

## APPENDIX 4

**FINANCIAL STATEMENT**
(Agricultural)

☐ Individual
☐ Partnership
☒ Corporation

Phone: 225-5911

By: Name  REX MONTGOMERY   Address  RR 2   BROOK, IN. 47922.

To: _____   Date of Statement _____

| ASSETS | | | LIABILITIES | |
|---|---|---|---|---|
| **CURRENT ASSETS** | | | **CURRENT LIABILITIES** (Due within 12 Months) | |
| Cash | 1500 | | Notes Payable (to whom, maturity, purpose) | |
| Crops or Feed on Hand (Schedule F) | | | | |
| Livestock Held for Sale (Schedule D) | | | AMERICAN STIFTE | 95 000 |
| Marketable Bonds and Securities (Schedule C) | | | BROOK BANK | 45,000 |
| Accounts Receivable (Custom Work, etc.) | 3000 | | Current Portion Intermediate Debt | |
| Notes Receivable | | | Current Portion Long Term Debt | |
| | | | Accrued Interest | |
| Cash Invested in Growing Crops | 3000 | | Accounts Payable | |
| Hedging Accts. | | | | |
| Other Current Assets | | | Taxes • Income, Real and Personal | 1500,00 |
| | | | Rent due | |
| | | | Other Current Liabilities | |
| TOTAL—Current Assets | $7500,00 | | TOTAL—Current Liabilities | |
| **INTERMEDIATE TERM ASSETS** | | | **INTERMEDIATE TERM LIABILITIES** | 141,500,00 |
| Cash Value Life Insurance (Schedule B) | | | Portion of loans of more than 12 Months on: | |
| Machinery, Equipment, Trucks (Schedule G) | 180,450,00 | | • Machinery and Equipment | |
| Cars | 10,000,00 | | | |
| Breeding Stock (Schedule E) | | | • Breeding Stock | |
| Securities (not readily marketable) (Schedule C) | | | | |
| Household Furnishings and Equipment | 2500 | | • Life Insurance (Schedule B) | |
| Recreational Equipment | | | • Household Furnishings and Equipment | |
| Other Intermediate Assets | | | Other Intermediate Term Liabilities | |
| TOTAL—Intermediate Assets | $192,950,00 | | TOTAL—Intermediate Liabilities | |
| **LONG TERM OR FIXED ASSETS** | | | **LONG TERM LIABILITIES** | |
| Farm Real Estate (Schedule A) | 490,000,00 | | Real Estate Mortgages (Schedule A) • Except | 75 000,00 |
| | | | that portion listed under Current Liabilities | |
| Other Real Estate (Schedule A) | | | TOTAL—Long Term Liabilities | 216,000,00 |
| | | | TOTAL LIABILITIES | |
| TOTAL—Fixed Assets | 490,000,00 | | PRESENT NET WORTH | 683,700,00 |
| TOTAL ASSETS | 683,700,00 | | TOTAL LIABILITIES & NET WORTH | 899,700,00 |

| SCHEDULE A—Real Estate—Owned or Rented | | | | | | | |
|---|---|---|---|---|---|---|---|
| Title Held By | Description | Acres | Purch. Price | Present Value | Mortgage | Mortgage Holder | Annual Payment |
| Owned NEWTON | WASHINGTON TWP. | 80 | 3500 | $ 280,000 | $ 45,000 | METROPOLITAN | |
| NEWTON | GRANT TWP. | 40 | 3500 | 140,000 | | | |
| JASPER | KANKAKE TWP. | 20 | 3500¢ | 70,000 | | | |
| Rented | | | Type Lease | | | Expires | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

For purpose of securing credit from time to time this statement is furnished and is certified to be true and correct. I (or We) agree to notify said bank promptly of any material change herein.

Signature  R. Montgomery   Date: 3-24-84   Signature  Virginia Montgomery   Date: 3/26/84

| | | | | |
|---|---|---|---|---|
| 1. Your Age  Physical Condition  _54_ | 5. Are any suits pending against you? | (Yes) No |
| 2. Name of Spouse  _MAXINE_ | 6. Do you carry health, accident or hospital insurance? | (Yes) No |
| 3. Ages of Children at Home  _NONE_ | 7. Do you carry insurance on bldgs., equip. or livestock? | (Yes) No |
| 4. Have you been involved in Bankruptcy?  _NO_  Yes No | 8. Do you carry crop insurance? | (Yes) No |

List off Farm Income:  _TEACHER - 20,000_
_TRUCK DRIVER - 50,000_

| If a Partnership or Corporation Give Detail: | Address | Per Cent Interest |
|---|---|---|
| Principals | | |

### SCHEDULE B—Life Insurance (include credit life)

| Insurance Company | Beneficiary | Face Value | Cash Value Amt. | Borrowed Due | From Whom |
|---|---|---|---|---|---|
| _METROPOLITAN_ | _MAXINE_ | _50,000_ | | | |
| | | | | | |
| | | | | | |
| | | | | | |

### SCHEDULE C—Bonds and Securities (in your name)

| No. of Shares or Par Value Bonds | Description | Market Value |
|---|---|---|
| _SHARES_ | _KENTLAND BANK_ | |
| | _BROOK BANK_ | |
| | **TOTAL** | |

### SCHEDULE G—Machinery and Equipment

| No. | Make | Kind | Model | Year | Description | Value |
|---|---|---|---|---|---|---|
| | | Tractor AC | _5020_ | _79_ | | _10,000_ |
| | | AC | _D-19_ | _64_ | | _4500_ |
| | | GRAIN HANDLING EQUIPMENT | | | _50,000_ _BU._ | _50,000_ |
| | | Combine IH | _LA DOCRS_ | | | |
| | | EVAN | FLOORS | | | |
| | | | UNLOADING AUGERS | | | |
| | | C. Picker | | | | |
| | | Planter | _494 AN_ | _69_ | _6_ | _3500_ |
| | | Plow | _INT_ | _69_ | _7_ | _4500_ |
| | | R. Hoe | | _74_ | | _1500_ |
| | | Chsl. Plow | | _74_ | | _1500_ |
| | | Disc | | _74_ | | _1500_ |
| | | Cult. | _2_ | _74_ | | _3500_ |
| | | Fld. Cult. | | _74_ | | _1000_ |
| | | Harrow | | _74_ | | _500_ |
| | | Drill | | _60_ | | _500_ |
| | | Man. Sp. | | | | |
| | | Wagons | _3_ | _77_ | | _5000_ |
| | | For. Harv. | | | | |
| | | Mower | | | | |
| | | Baler | | | | |
| | | Rake | | | | |
| | | Sprayer | _1_ | _74_ | | _1000_ |
| | | Elev. | | | | |
| | | Augers | _3_ | _40-30-60_ | | _3500_ |
| | | Gr. Dryer | | | | |
| | | Trucks | _1_ | _83_ | _INT._ | _95,000_ |
| | | Lvstk. Eq. | | | | |
| | | Lwn. Mower | _1_ | _AC_ | _B 1V_ | _1200_ |
| | | Shp. Equip. | | | | _250_ |
| | | **TOTAL** | | | | _180,450_ |

### SCHEDULE D—Livestock Held for Sale

| Number | Description | Wt. | Price | Value |
|---|---|---|---|---|
| | | | | |
| | | .. | . | |

### SCHEDULE E—Breeding Stock

| Number | Description | Age | Wt. | Price | Value |
|---|---|---|---|---|---|
| | | | | | |

### SCHEDULE F—Crops or Feed on Hand or Growing (your share only)

| Crop or Feed | Amt. on Hand Bu. or Tons | Unit Price | Total Value | Acres in Crops Owned | Rented |
|---|---|---|---|---|---|
| | | | | | |

CASE NO. _86-4067_
_American State Bank_
VS. _Debtors_
PLAINTIFF'S EXHIBIT _#4_
DATE _9/15/87_ .... IDEN.
DATE _9/15/87_ .... EVID.
BY _P. Gwss_
Deputy Clerk
AO 386

TOTALS

Form 18A-9

Reorder through Pantagraph Office Equipment & Supplies

## APPENDIX 5

### FINANCIAL STATEMENT
### (Agricultural)

☒ Individual
☐ Partnership
☐ Corporation

Phone: 275-5911

By:
Name _RLX MONTGOMERY_  Address _RR 2  BROOK, IND 47922_

To: _ASB_  Date of Statement

| ASSETS | | | LIABILITIES | |
|---|---|---|---|---|
| **CURRENT ASSETS** | | | **CURRENT LIABILITIES (Due within 12 Months)** | |
| Cash | | | Notes Payable (to whom, maturity, purpose) | 95,000 |
| Crops or Feed on Hand (Schedule F) | | | ACCUMULATED INT | 10,000 |
| Livestock Held for Sale (Schedule D) | | | CAR - GMAC | 10,000 |
| Marketable Bonds and Securities (Schedule C) | 13,600 | | | |
| Accounts Receivable (Custom Work, etc.) | | | | |
| | | | Current Portion Intermediate Debt | |
| Notes Receivable | | | Current Portion Long Term Debt | |
| | | | Accrued Interest | |
| Cash Invested in Growing Crops | | | Accounts Payable | |
| | | | | |
| Hedging Accts. | | | | |
| Other Current Assets | | | Taxes • Income, Real and Personal | |
| | | | Rent due | |
| | | | Other Current Liabilities | |
| | | | | |
| TOTAL—Current Assets | 13,600 | | TOTAL—Current Liabilities | 115,000 |
| **INTERMEDIATE-TERM ASSETS** | | | **INTERMEDIATE TERM LIABILITIES** | |
| Cash Value Life Insurance (Schedule B) | | | Portion of loans of more than 12 Months on: | |
| Machinery, Equipment, Trucks (Schedule G) | 152,800 | | • Machinery and Equipment | |
| Cars V-6 BUICK REGAL 1984 | 10,000 | | | |
| Breeding Stock (Schedule E) | | | • Breeding Stock | |
| Securities (not readily marketable) (Schedule C) | | | | |
| Household Furnishings and Equipment | | | • Life Insurance (Schedule B) | |
| Recreational Equipment | | | • Household Furnishings and Equipment | |
| | | | | |
| Other Intermediate Assets | | | Other Intermediate Term Liabilities | |
| | | | | |
| TOTAL—Intermediate Assets | | | TOTAL—Intermediate Liabilities | |
| **LONG TERM OR FIXED ASSETS** | | | **LONG TERM LIABILITIES** | |
| Farm Real Estate (Schedule A) | 280,000 | | Real Estate Mortgages (Schedule A) • Except | |
| | | | that portion listed under Current Liabilities | |
| | | | METROPOL ITAL + CSB | 160,000 |
| Other Real Estate (Schedule A) | | | TOTAL—Long Term Liabilities | 275,000 |
| | | | TOTAL LIABILITIES | |
| TOTAL—Fixed Assets | | | PRESENT NET WORTH | 181,400 |
| TOTAL ASSETS | 456,400 | | TOTAL LIABILITIES & NET WORTH | 456,400 |

| **SCHEDULE A—Real Estate—Owned or Rented** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Title Held By | Description | Acres | Purch. Price | Present Value $ | Mortgage $ | Mortgage Holder | Annual Payment | |
| Owned RLX+CESTEL LRISTOL | WASHINGTON TWP | 80 | — | 160,000 | 160,000 | — | | |
| RLX+CESTEL | | | | | | | | |
| RLX+WIFE | LIFETIMESESTTO | 40 | | 80,000 | — | | | |
| Rented JASPER | FATHER | | Type Lease | | | Expires | | |
| JASPER | MAXWELL TWP | 20 | | 40,000 | | | | |
| | | | | 280,000 | | | | |

For purpose of securing credit from time to time this statement is furnished and is certified to be true and correct. I (or We) agree to notify said bank promptly of any material change herein.

Signature _____ Date: _____ Signature X _RW Montgomery_ Date 2-12-85

**970**

| 1. Your Age | Physical Condition | | | | 5. Are any suits pending against you? | | | Yes No |
|---|---|---|---|---|---|---|---|---|
| 2. Name of Spouse | | | | | 6. Do you carry health, accident or hospital insurance? | | | Yes No |
| 3. Ages of Children at Home | | | . | | 7. Do you carry insurance on bldgs., equip. or livestock? | | | Yes No |
| 4. Have you been involved in Bankruptcy? | | Yes No | | 8. Do you carry crop insurance | | | Yes No |

List of Farm Income:

If a Partnership or Corporation Give Detail: | Address | Per Cent Interest

Principals

### SCHEDULE B—Life Insurance (include credit life)

| Insurance Company | Beneficiary | Face Value | Cash Value Amt. | Borrowed Due | From Whom |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

### SCHEDULE C—Bonds and Securities (in your name) / SCHEDULE G—Machinery and Equipment

| No. of Shares or Par Value Bonds | Description | Market Value | No. | Make | Kind | Model | Year | Description | Value |
|---|---|---|---|---|---|---|---|---|---|
| | | 1960 | 1 | AC | Tractor 42 | 5020 | 79 | | 7,000 |
| 80 SHARES | PRAIRIELAND BANKSTOCK | 3600 | 1 | AC | | D-19 | 69 | | 350 |
| 100 SHARES | CSB - BROOK SPARK | 10,000 | | | GRAIN BINS | 30,000 | 80 | | |
| | | | | | | 20,000 | 80 | 40MS (LOAD & UNLOAD AUGERS) | 50,000 |
| | TOTAL | 13,600 | | LOAD & UNLOAD AUGERS) | | | | | |

### SCHEDULE D—Livestock Held for Sale

| Number | Description | Wt. | Price | Value | | | Combine | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | C. Picker | | | |
| | | | | | 1 | JD | Planter | 474 | 69 6 ROW | 3500 |
| | | | | | 1 | TNT | Plow | | 69 7 BOTTOM | 4500 |

### SCHEDULE E—Breeding Stock

| Number | Description | Age | Wt. | Price | Value | | | R. Hoe | | 74 | | 1000 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | 1 | AC | Chsl. Plow | | 74 | | 1500 |
| | | | | | | 1 | AC | Disc | | 74 | 14 FOOT | 1500 |
| | | | | | | 2 | JD | Cult. | 2 | 74 | | 3500 |
| | | | | | | 1 | GLENCO | Fld. Cult. | | 74 | | 500 |
| | | | | | | 1 | IH | Harrow | | 74 | | 500 |

### SCHEDULE F—Crops or Feed on Hand or Growing (your share only)

| Crop or Feed | Amt. on Hand Bu. or Tons | Unit Price | Total Value | Acres in Crops Owned | Rented | | | Drill | | 60 | | 500 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Man. Sp. | | | | |
| | | | | | | 2 | H&W | Wagons | | 77 350 8 0 | | 1000 |
| | | | | | | 1 | JD | WAGON | | 60 | | 500 |
| | | | | | | | | For. Harv. | | | | |
| | | | | | | | | Mower | | | | |
| | | | | | | | | Baler | | | | |
CASE NO. 86-4067 | | | | | | | Rake | | | | |
American State Bank | | | | | | 1 | AC | Sprayer | | 74 | | 400 |
| | | | | | | | Elev. | | | | |
VS. Debtors | | | | | | 3 | MAYRATH | Augers | BINS | ADD'L | | |
| | | | | | | Gr. Dryer | | | | |
PLAINTIFF'S EXHIBIT #5 | | | | | | | | | | | |
DATE 9/15/87 IDEN. | | | | | | 1 | INT | Trucks | | 83 | | 20,000 |
DATE 9/15/87 EVID. | | | | | | | Lvstk. Eq. | | | | |
BY P. Gross Deputy Clerk | | | | | | 1 | AC | Lwn. Mower | | AC 18 INCH | | 1000 |
AO 386 | | | | | | | Shp. Equip. | LN | | | 400 |
| | | | | | | | TOTAL | | | 152,800 |

Form 15A-9

Reorder through Pantograph Office Equipment & Supplies
Box 1305, Bloomington, Ill. 61701